case. It is Schatz v. GEICO, number 18-6206. Counsel, you may proceed. Good afternoon. If it pleases the court, I'm Clifton Nafee for the appellant, Mr. Schatz. Your honors, this really is a classic case for jury determination. It is the unreasonableness of a factual dispute of an evaluation of a first-party underinsured motorist claim for the jury. The Oklahoma Supreme Court has said, yes, it is. Even the OIG, Oklahoma Uniform Jury Instruction 22.2 designates the valuation of a claim and a low, unreasonably low offer as one of those examples of an act of bad faith to be submitted to the jury. Every single time, no matter what the medical evidence? Your honor, if the issue is one, and we've got two issues of what you just said, and that is whether or not there is a dollar valuation, such as in one of the cases that defense sites where there was a $2,000 offer and a $5,000 jury verdict. Clearly, that shows the valuation was within reason or reasonable. So no, but under the medical evaluation, as we have in this case, where the defendant said, based upon a biased evaluator, a known biased doctor, that even defense counsel in the record that we have says you cannot rely upon a biased medical examiner, then the rest of the evidence becomes insurmountably a jury question on the reasonableness of the medical evidence. And in this case, your honor, there is such a significant difference between a strain and a sprain and a herniation. There is no comparison. The case of Bramble v. Geico was cited to the court by both sides. That's a prime example of a jury question, and it's almost the exact same factual example as in the case at Barr. There was a herniation. There was chiropractic treatment. There was an epidural steroid injection, and Geico evaluated both bodily injury claims between $2,000 and $8,000. And yet, the judge in Bramble said that that was the basis for an unreasonable evaluation to be submitted for the jury. That's what we have here, Judge Phillips. That's exactly what we have in this case. Counsel, could I just, this is coming from a lapse to civil procedure teacher, but I need to ask you, why does this case satisfy the $75,000 amount in controversy for diversity jurisdiction? Well, you know, that's an interesting thing. That's a removal issue that defendant made in their response. However, this case has the issue of unfair dealing. It's not based on just the contract. In fact, the contract damages are not, a breach of contract is not the theory of recovery. It is the breach of the duty of unfair good faith and fair dealing. And with that, punitive damages. And so there is the assumption that the claim is in excess of $75,000. Now, did your complaint mention punitive damages? It does not mention it, but it does not have to. In Oklahoma, Your Honor, the claim of the underlying act is the that brings punitive damages. It would be unnecessary to plead punitive damages. And we cited those cases to the court in our brief in chief that you do not need to plead specifically. We are claiming punitive damages. You need to plead the underlying acts. And we did that. Okay. Let me ask you, this is more of a legal question. I know you want to get into whether there's a factual dispute. I'm here for your questions. That's very good. So in your view, was GEICO's waiver of its subrogation rights irrelevant to whether it had a duty of paying first dollar? Yes. Do you have support for that? The Birch case itself. Birch? Birch v. Allstate is the case, Your Honor. That's the drop-down case. And in that case, it was completely irrelevant to waiver of subrogation. Why? There was no subrogation allowed. The statute of limitations had expired against the tortfeasor. There could never have been a waiver. The whole fact of this lately argued in the appellate court, not in the trial court, the issue of the waiver there, has no impact on whether or not the evaluation needs to be made of whether the claim exceeded the And if it did, then under Birch v. Allstate, it has to drop down. Okay, let me just follow up. Yes, sir. So what you seem to be saying is that once GEICO said that Mr. Schott's claim exceeded Farmers' Policy Limit, that he should be able to receive prompt payment from GEICO for the full claim, but also receive payment from Farmers' offer to pay the $25,000. Is that correct? Yes, and why? Well, it's because the claim exceeds both. But doesn't that seem like double recovery? No. How would it be double recovery? Because that's exactly what happened in Buzzer. Buzzer v. Farmers. But the subrogation right's gone. The same happened in Buzzer v. Farmers. Subrogation rights were gone, and that's what they claimed. Porter v. MFA waived the subrogation because Mr. Buzzer accepted the City of Norman's policy limits, and therefore Farmers said, you've abrogated our subrogation rights and we have none. We don't owe you anything. But let me make sure I understand. I think you're premising your argument on your argument that the claim exceeded both policy limits, and at that point where they made the offer, GEICO had said, no, it doesn't exceed both policy limits. They had conceded that they had $3,000 worth of liability when they re-evaluated. So answer the question based on that being the scenario, and they offered that $3,000. Again, Judge Moritz, the answer is yes, but it's yes to both of your questions. There is two parts of your question, and one of them is if the value of the claim, if the reasonable value of the claim, if we allow insurance company to put any unreasonable low value, if that claim... If it is reasonable. That changes your argument, correct? No, and the reason it doesn't change my argument on the BIRCWH drop-down and immediate payment, as Judge Mathison asked, and the question has to do with once the claim exceeds the tortfeasor's liability limits, BIRCWH mandates immediate payment of the $25,000. Now... Even when it's already been paid? It hasn't been paid, but... And there's been a subrogation. I thought there had... It hadn't... That's the problem. It had not been paid. In fact, they did not waive their subrogation rights. They waived it within days of getting the claim and before they got any medical. So the subrogation had nothing to do with their waiver. But then they also waived it again after they made the $3,000 offer, so they knew that they were not going to subrogate, having made the $3,000. It was two weeks after the $3,200. So they agreed to destroy the subrogation right, which is different than BIRCWH. Say that again, Judge. I'm sorry. GEICO agreed to waive the subrogation right. That would destroy the subrogation right. That's different than BIRCWH. BIRCWH, there was no subrogation right, but it was never... There was a subrogation right, but the statute of limitations had run. That's right. And that meant that they had... But the court drew a distinction and said, if it's just something passive like that, that's not destroying the subrogation right. Absolutely right. But that's not our case. Let me ask you a general question and ask you to be as specific as you can in response. What should GEICO have done to avoid your bad faith suit? Just paid everything? Two things they should have done, and one of which they did. Waive subrogation, and the other is pay the $25,000 uninsured motorist coverage. That's what they should have done. Oh, you'd accept that? You wouldn't be requiring the first dollar? That is the first dollar. Oh, the first dollar. You start the first dollar at the uninsured motorist. Yes. Oklahoma requires that the underinsured motorist coverage is primary, dollar one. It pays the first dollar. So maybe you could shed, just building on these series of questions. So you go to GEICO and say, look, farmers is offered to go up to the $25,000. That was after, yes. Okay. And you say to GEICO, but would you waive subrogation so we can take the $25,000? That's exactly right. Right. And they say, okay. That they'll waive. All right. And, but then, when they tack the $3,000 on top of the $25,000. The $3,200 came first. That's the problem, Judge. Your chronology is the offer of $3,200 came before the second waiver and our notice to them. Okay. So first waiver, $3,200, second waiver. Correct. But in both instances, the reason the ask was made was to enable Mr. Schatz to take the $25,000 from farmers. On the second time. We could never have taken it the first time because then Porter versus MFA would have abrogated subrogation because it was a partial offer of $15,000. Then why did you ask him to waive it the first time? If they waived it, then we could have gotten the $25,000 from GEICO as well. Okay. I think I'll reserve if there's no further questions at this time. Thank you. May it please the court. My friend and colleague, Mr. Nafee. My name is Jerry Pignotto for GEICO. As I anticipated, this seems to revolve around the birch issue and I'm more than prepared to address that. In fact, Mr. Nafee's argument fails because an insured would necessarily recover a windfall payment of $25,000 from the UM insurer and $25,000 from the tortfeasor's liability insurer. In this particular case, before GEICO ever even had notice of this accident, no claim had been made. They knew nothing about it. An agreement was reached between the insured and the tortfeasor's insurer farmers, whereby farmers agreed to pay its limits. The insurance counsel, Mr. Nafee, said, we'll accept that, but hold on to that right now. I want to go to GEICO. Goes to GEICO and informs GEICO about the accident. Three years after the accident, GEICO hears from Mr. Nafee about this accident and Mr. Nafee informs him correctly that farmers has tendered its $25,000 policy limits. There's a little confusion there over how much was paid by farmers to the workers' comp carrier, but the fact of the matter is, farmers had agreed to pay its limits. That was crystal clear and made clear to GEICO. Mr. Nafee said, we ask that you waive sub-row. GEICO promptly looked at this and said, we agree to waive sub-row. Now, the reality is- Can you just explain why, what incentive did GEICO have to do that at that point? To waive sub-row? Right. Well, you know, the insurance, the U.M. insurers routinely waive sub-row, in my personal experience. And I'll tell you there's another reason why in this particular case- Well, but that's just, it's just routine? Is that the answer? Well, because substituting payment creates all kinds of problems. For example, Mr. Nafee referenced the Bramble decision. Now, Bramble, I know something about the Bramble decision, but in that particular case, it was clear that the GEICO adjuster didn't understand the concept of substituting payment. And the difference between Bramble in this case, most importantly, is that in Bramble, GEICO actually reduced the total amount of coverage available to the insurer through the arbitration proceeding. There had been a total of 100 liability, 25 U.M. available to the insured, and GEICO essentially reduced that to 75 liability, 25 for a total of 100. That was the basis of Judge Kern's ruling on that motion for summary judgment. And in my opinion, that's what Bramble stands for. A U.M. insurer cannot reduce the total amount of coverage available to the insured. Can you tell me what you mean by the words waive subroll? What does that mean in our context? How did GEICO understand that it was giving up? GEICO could say, we're going to pay you some money, but we're going to pursue recovery of what we pay you from the tortfeasor. In this particular case, GEICO said, no, we're going to give you permission to settle. I mean, you can't argue that that's bad faith. Nobody's suggesting that. That's a benefit to the insured. But what I wanted to point out was that just two years ago, the Oklahoma Supreme Court handed down an opinion that is not cited in my brief, and I'd like to cite that case. It's called Raymond v. Taylor, 4-12 Pacific 3rd, 1141, Oklahoma Supreme Court, 2017. And that was an important case in Oklahoma because what it said was, when a U.M. carrier pursues its right of subrogation against the tortfeasor, it can only recover against the tortfeasor's liability insurer and only up to those limits. It cannot seek subrogation against the personal assets of the tortfeasor. So in this particular case, we couldn't pursue subrogation because farmers had already offered the limits. We can't go after assets. There are no additional liability proceeds to go after. That helps me. Thank you. You bet. You bet. But importantly, in this particular case, with respect to the Birch issue, we did exactly what we should have done. Birch doesn't control here because we had information that farmers had offered their limits. Now, Birch contemplates that when there has been no offer of limits by the liability insurer, then we do drop down and become primary. We pay from dollar one. And if that had been the case here, which it wasn't, we would have dropped down, paid our $25,000, and pursued our right of subrogation against the liability insurer. We didn't need to do that here because farmers had offered its limits. We knew that they had offered their limits. So Birch doesn't even apply. GEICO evaluated this at $3,000 more than farmers' $25,000 limits. There's no case that cleanly says what you just said, though, is there? Well, you know, I think that Birch gets us there. It doesn't say it as cleanly as I would like to say. The way you said it sounded very concise. It's just the cases, when you look at them, just are a little more muddled. Well, I think a fair reading of Birch leads to that conclusion. There's not another case that I'm aware of that squarely addresses this precise issue. But I think it would have to. Otherwise, as we've pointed out in our brief, it would result in the absurd result that an insured could tell the liability insurer, hold on to that for a minute. Let me go to the U.M. carrier. And now you can tell the U.K. carrier, we haven't received that money yet. So therefore, you have to step down, pay from $1, and we'll take your $25. Then say to farmers, all right, now I'm ready to accept it. I don't believe the Oklahoma Supreme Court ever intended for that type of a result. Now, the other aspect of it. You've talked about Birch, but has the Oklahoma Supreme Court indicated through any other decisions that your position is the correct one? You know, Birch has been cited many times over the years. But as I indicated a moment ago, I don't believe this precise factual scenario has arisen since Birch. Well, we have the factual scenario, but we also have the legal question. What is the consequence of the waiver of subrogation on the first dollar drop-down payment? If you were going to frame the legal question, isn't that what we're looking at? You know, in the cases that the Supreme Court of Oklahoma have addressed this subrow, I don't believe this is a novel issue. Well, if it weren't a novel issue, wouldn't you have a case? I mean, you've only said, well, this is what Birch would suggest, but I'm with Judge Moritz. I've looked at the cases, and I'm not seeing a clear answer to the question posed here. Oklahoma's U.M. statute, Title 36, Section 3636, says in Subpart F that a U.M. insurer has two options. When the insured or the insurer's attorney provides notice to the U.M. carrier that a settlement agreement has been reached with the liability insurer, the U.M. insurer then has two options, one, waive subrow or substitute payment. And you have 60 days to do so, or you are deemed to have waived your right of subrogation. GEICO didn't waste time. As a benefit to its insured, it said, you have our permission to go ahead and settle with farmers. That can hardly constitute an act of bad faith. Well, just to kind of repeat back to you what I'm hearing, it sounds as if you're saying the statute is more clear than the Oklahoma Supreme Court has been on the question presented to this Court. Well, I guess what I'm saying is the 1996 decision in Birch v. Allstate didn't go as far as this issue. I think that if you read Birch, a fair reading of Birch would lead to the result I am arguing. I'm also saying that Section 3636 is clear in that it describes the options available to a U.M. insurer in this context. Let me ask you this. I came across a line in the Strong case, which is Oklahoma Civil Appeals Court, and I'm quoting, the carrier's legal liability to exercise subrogation rights is not an indispensable condition of its obligation to pay an otherwise valid U.M. claim. Now, why wouldn't that undercut the argument you're making? Okay, Your Honor. I'll read it again. It's 106 Pacific 3rd at 610. And the court said the carrier's legal ability to exercise subrogation rights is not an indispensable condition of its obligation to pay an otherwise valid U.M. claim. Well, I mean, the way I'm reading that and I'm listening to it is that we have an obligation to pay what is owed under our contract.  If the liability insurer has already offered its limits, we have those two options that I have already described. I don't think that's a distinguishing case here. I didn't think you would. Now, to proceed. The other issue on this appeal is whether or not the handling of this claim could be considered reasonable and, therefore, whether or not the court properly granted Geico's motion for summary judgment on that basis. There is a long line of cases, and we've cited them. Going all the way back down to Christian, more recently,  Many cases, Oklahoma Supreme Court and federal district cases, where the trial court or district court has granted the insurer's motions for summary judgment and they have been affirmed on appeal. Based on this theory, it's what we call value disputes. This is a pure value dispute. From an evidentiary standpoint, Geico had sufficient evidence before it that there were pre-existing problems, pre-existing conditions, that there was ample evidence that this particular accident did not cause the injuries complained of. For example, one of the physicians that the plaintiff had been seeing for many, many years addressed his digestive issues that had existed long before this accident. In addition, we were presented with an MRI report after the accident that showed herniation, but nobody has suggested or did suggest when that herniation began. Counsel, Mr. Schatz argues that Geico's investigation was deficient because it didn't review the workers' comp records. What's your response to that argument? Well, you know what, if you look at the case we cited of Roberts v. State Farm, it's a federal case, and in that particular case, it says the standard is not perfection. It's whether or not the insurer's carrier acted reasonably in its investigation. And the fact in that case was there's always going to be some particular part of the investigation the insurer will argue. Well, first of all, do you concede that that didn't happen? That what didn't happen? That the workers' comp records were not examined. They weren't closely examined. Well, so they were examined but not closely, or they weren't examined? I mean, just what does the record show? And I'm trying to recall. I think I would tend to agree with you that the comp records were not examined. And I don't think that's dispositive of anything. There are a lot of records. You can always point to one more record that should have been requested to review. The question is whether the conduct as a whole, considering everything that was reviewed and requested, was reasonable. Are you saying it doesn't matter because even if you had reviewed the workers' comp, it wouldn't have changed the decision? The records, the overwhelming evidence that we did review, supported the decision and the evaluation that we made. But the workers' comp records really didn't support it, right? Didn't support what? Didn't support your position. We don't know that. They were favorable toward the claimant, were they not? I don't believe they were, from what I've learned since. So GEICO removed the case from state court, correct? It's a diversity action that was removed to federal court. So you must have thought then that the amount in controversy was $75,000. No. We certainly removed it because lawsuits that are filed for bad faith and where we assume punitive damages will be sought, such as in this case, are removable. And there was no motion to remand filed and the court allowed that. But isn't that a jurisdictional requirement under the statute for diversity? I didn't bring the cases with me, but there are plenty of western district rulings where removals have been held appropriate in bad faith cases where extra contractual damages are sought even in unspecified amounts. I'm just asking. Yeah, that's my thought on it. I'm here for any questions. I think we've exhausted our questions for you, counsel. Thank you very much. Thank you. I believe we have some rebuttal time. Thank you. I'd like to address that last question about the workers' compensation first. The workers' compensation issue was known to exist by GEICO immediately. They called the city of Lawton immediately, so they knew that there were workers' compensation records that existed. And they knew that what they would tell is whether or not there was permanent disability determined or not, which is very important to whether or not this was a strain or a sprain or whether or not this was a permanent injury. There had already been a determination by the time this uninsured motorist claim was made that the workers' compensation was a permanent disability, which our unfair dealing expert, who used to be a claims manager for two national insurance companies, said those were easily findable because she did it. Did you have them? Yes. Why didn't you furnish them? I'm sorry. The expert did it after litigation. The expert came up with those and said, yes, those were easily findable by the GEICO if they had chosen to do so. But you're saying GEICO should have affirmatively went outside the record and gotten these work comp records based on some reference that they saw within the file? Yes. This is not an ERISA claim where there is an administrative record. You didn't point it out to them. They have the affirmative duty. Buzzard v. Farmers says they have the affirmative duty to investigate and evaluate and that they are peculiarly situated to do this type of investigation. And so, yes. Didn't they send your client? I'm trying to think if I've got this right. But time-wise, at some point they sent your client a release and he didn't ever sign the authorization. After the statutory time to investigate had already expired, they asked for a release on only the ulcers, which doesn't have anything to do with the underlying claim that was evaluated back in April 1st. It wasn't until four months later that they asked for the release and they got them. Within two days of their request, they got them. And 30 days expired and they didn't use them. They didn't do one thing. And, in fact, in the examination of the adjuster, I asked, well, were they in the file? Yeah. Well, did you use them? No. So they were there to be used if they wanted to, but they didn't use them. Counsel, you're over time, so please sum up. Very well. We would ask that the matter be reversed and remanded to the trial court. Thank you, Your Honor. Thank you. Thank you, counsel. The case will be submitted and counsel are excused.